Home of which are Mr. Rickard, when you're ready. Good morning. May it please the court, I'm Nathaniel Rickard, counsel for the Ad Hoc Trade Action Committee. The issue on appeal is the multinational corporation provision of 19 U.S.C. 1677 B.D. The committee's position is that the provision is mandatory when the three statutory criteria are met and the government's position is that the MNC provision does not apply when a multinational corporation has operations in a non-market economy. To what extent at the outset do you think we need to defer to the agency's construction of the statute here? I believe that the statute is clear and unambiguous and therefore falls under the first prong of the Chevron standard. But the statute does talk about sales. There really aren't sales in a market sense in a non-market economy, are there? There's prices that are set by fiat based more on cost than on sales prices. So doesn't that introduce the ambiguity that would give you a little more difficulty? Well, I think that the first point for us is that the statute is mandatory in terms of if the three criteria are met, then the provision must apply. In the language of the statute, once the MNC provision applies for determining normal value, includes language that refers to the word sold. It refers to the cost of production and also to price. In terms of the word sold, where it is used, it says that the normal value of the foreign-like product produced in the affiliate country will be determined by a substantial quantity sold. That doesn't dictate how normal value is determined. Only, at best, that there is a factual determination that requires that substantial quantities of the foreign-like product must be sold by the affiliate entity, which is consistent with the first criteria that the multinational corporation has to have affiliates that produce the same merchandise in multiple facilities throughout different countries. So is it your view that this particular sentence is equally applicable to non-market and market economies? Yes, Your Honor. And that the application of the MNC provision, once those three criteria are met, that language that follows in how one determines the normal value for that foreign-like product does not preclude the application to a multinational corporation that has affiliates in a non-market economy. Similarly, it would not preclude normal value if it's determined by constructed value. Well, it's a little tougher, though, going back to Judge Rader's point on the latter sentence. I guess it's the very last sentence in that provision, which talks about price. And we don't use price in doing the normal value calculations in non-market economies, do we? That's correct. So I think we're back to the question about why, given that Congress chose to not, that Congress did not envision that non-market economies would be covered under this provision. Well, we read the last part of the sentence as not determining, again, how normal value is determined for the foreign-like product produced in the affiliate, but instead saying that when the foreign-like product is determined by price, that that price is actually adjusted. Because the language says the price of the at time of exportation from the exporting country. That doesn't make sense in terms of when you're looking at the affiliates production of a foreign-like product in the home country of that other country. I've lost you. Yeah, I'm sorry. I apologize. The construction of the statute that the government presents is that the question that is being asked is how do you determine the normal value of the foreign-like product produced by the affiliate entity? And that is supposedly that normal value is determined by sales in the home market in that non-exporting country. But the language of the statute says you determine that price based off of the price at exportation from the exporting country. So if we've got it here, you've got operations in Thailand, and then it has affiliate entities that are operating in China and in Vietnam. And so when you're determining what the normal value is for the foreign-like product produced in China, the statute says that you look at the price at which that's sold in the exporting country at the time of exportation, which would begin back in Thailand. So we read that as an adjustment to what the provisions are under subsection A, which is if you're determining price, instead of looking at the price of sale for consumption in the home market in Thailand or in a third country market, you look at the price at the time of exportation from the exporting country. And so you're saying that price here doesn't include the other non-market economies, that it just deals with price in Thailand? Right. You can read the statute as only applying an amendment to when you're determining the normal value in terms of price. And that, again, if it's... I thought your argument was different. So I just want to make sure. I thought your argument was even though this might be applicable to non-market economies, there are ways that commerce has to construct a price in a non-market economy with alternative calculations and so forth. I thought, no? No. The argument I think that we presented was that normal value is not, that the way in which you determine normal value is not dictated by the statute. The statutory provisions provide four different options for calculating normal value in a normal circumstance. And that's the factors for production for non-market economies. That's what I meant, that you were saying that normal value does not necessarily dictate that we're only dealing with market economies. Correct. Right. And so the use of the term normal value as opposed to price is what allows the department or the MNC provision to be applied in circumstances where normal value is not determined by price. And so outside of the... Why don't we look at the fact that we've already got in 1677B subsection C a clear way to regulate anti-dumping in Congress told us where to go, where to look? Right. But in this circumstance the case involves a market economy with affiliate facilities that are in a non-market economy. And so the question I think is whether or not that provision that applies to non-market economies can be brought in under the special provision for the multinational corporation provision in where a market economy is at issue. And then we're back into the use of the terms like price and sales that suggest there's a certain wisdom in what commerce is doing. Again, the thing that I think that we focus on is that in the third criteria... Well, under the three criteria, the only limitation to the exporter. If the exporter's normal value is determined in reference to prices for sales, for consumption in the home market, then the multinational corporation provision doesn't apply. But under the third criteria, the question is whether or not the normal value of the foreign-like product produced in the affiliate facility is higher than the normal value for the foreign-like product produced in the exporter's facility. In that And so it can be through non-market economy. It can also be through constructed value if the other country is a market economy, which does not refer to prices, but is instead a constructed value based off the cost of productions. Or it could be through third country sales or through home market sales. Let me go back to one of the earlier points. I mean, you said dispositively at the get-go that the three criteria here have been met. And I'm a little confused over whether or not Didn't the CIT, the Court of International Trade, conclude that the second criteria was not met? I think that... I was confused about this as well, and I think I've got... I understand what the court was saying now. And I can ask the other side, obviously, about that as well. I think what the Court of International Trade was saying was, consistently with the Department of Commerce, the second criteria could not ever be met in a circumstance where the multinational corporation had affiliates in a non-market economy. It's not based off a statutory reading, but it's instead based off of a logical deduction that if the exporter at issue was in a non-market economy, they could never meet the second criteria. But looking at it another way, but in the absence of that decision, you think that there was no dispute that otherwise... That's correct. ...that the second criteria was met? That's correct. Because in the administrative record below, the department found that tiny-mized sales in the home market were not sufficient to provide a comparison to its export price sales. And therefore, that A1C provision applied on the facts of the record. I think the only other thing that I wanted to comment on was on the intent of Congress in enacting the provision. And our position is that the intention of Congress in enacting the multinational corporation provision was to prevent circumvention or evasion of the anti-dumping orders by a multinational corporation moving its exports of subject merchandise to whatever facility would have the lowest normal value. The government reads the legislative intent far more narrowly and refers to language that talks about where protected home markets are used in affiliate facilities to in effect subsidize sales from the exporting country out. If that is correct, though, that's an extremely narrow reading of the MNC provision because it means that it can only apply where the affiliate entity has... Their normal value is determined by sales in their own home market. So even if you were to take price, you still should be able to refer to price in that there is nothing in the statute as set out in the MNC provision that reads it narrowly so that it would only apply in circumstances where the affiliate had a protected home market. That just... That can't be developed from the language of the statute. If that's it, I can reserve the rest of my time. Okay. Thank you, Mr. Rickert. Mr. Tasini? May it please the court, there are two major points here that we'd like to make. First, this case is a Chevron 2 type analysis because subsection D expressly limits normal value to by reference to the normal value at which the foreign-like product is sold in substantial quantities. So the question is, is whether a value created pursuant to the non-market economy statute, the value based upon the factors of production, whether that's really a sale. And the Department of Commerce concluded that it was not. Doesn't Commerce all the time construct values for non-market economy using alternative calculations, surrogates, other methodologies? Don't you do that in a lot of different contexts? No, because when the Department of Commerce constructs a value for say in the case of Thai Shrimp here, Commerce looks to what the investigated company actually paid its suppliers in Thai currency for its raw materials, for its electricity, for all of the factors that went into the production of that merchandise. So it constructs a value from Thai May's actual experience. In the non-market economy country, if there's a Vietnamese company that is doing basically the same thing but paying in Vietnamese currency, what Commerce would do is look at what the prices or the value of that merchandise would be in some surrogate country, would look to India or Bangladesh. And it wouldn't match the exact experience of the Vietnamese company. No, all I'm suggesting is that Commerce in various other contexts in the anti-dumping and otherwise does that. They reconstruct it when they're dealing with non-market economies using surrogates and other different kinds of methodology, right? In market economies as well, yes, in calculating constructed value, but generally they do not use surrogates. They use the actual experience of the respondent. Right, if they can. If it's available. Correct, and otherwise Commerce has to resort to facts available, which is an area of the law that's not at issue in this case. Well let me ask you, is there a firm rule here? Let's assume you have a multinational corporation and you have major affiliates in seven leading markets and one little affiliate, a seventh, an eighth little affiliate in Vietnam. The Commerce's position is that the MNC rule does not apply? No, first of all, that hypothetical was not before the court, but it might be reasonable for the agency to then look at the affiliates in other market economies. Say if the Thai company here had an affiliate in India, it would be a totally different situation. What you're asking us to give Chevron deference to, I thought, was when there's a non-market country implicated here as part of the MNC, then the MNC rule doesn't apply. Am I wrong about that? No, because the case only involved affiliates in non-market economy countries. So what is the rule? So the rule is that when there's a multinational corporation and all of your affiliates are in non-market economies, this rule doesn't apply, but if one out of three affiliates are in non-markets, it does apply. What's the rule? Well Commerce hasn't come up with a rule, however the concerns that the Department of Commerce... in this case, by reference to the normal value at which the foreign-like product is sold in substantial quantities, those words in Section 1677 B.D. are ambiguous as to whether looking then to the non-market economy affiliates, whether there's actually a sale. So you're saying any time there's a non-market affiliate for an MNC, I don't understand how the theory you're using to suggest, one, that there's an ambiguity and two, that there ought to be deference because of this language, that would lead you... it's either if you have an affiliate in non-market, you're out of this provision or not. I don't understand how else you could parse it. Well, the Department of Commerce has not parsed it. Maybe the Department of Commerce would say, well, we could rely upon a market economy affiliate, but that's a case that... A non-market, I'm talking about... if you have an MNC and it's got affiliates in various market economies, but it has two affiliates that are in non-market economies, Commerce would say, I thought that this rule doesn't apply. That it would at least, at the very least, Commerce would say that it does not apply to the two non-market economy affiliates. It may nevertheless apply to the other market economy affiliates. So is that what you're saying here? That with Tai Mei it applies to the Thailand, but not to China and Vietnam? In this case we're saying with respect to Tai Mei, the only affiliates on the record were Vietnamese and Chinese affiliates. So is Commerce's rule when all of the affiliates of a multinational corporation are in non-market economies and the rule doesn't apply? I'm just trying to find out what you're asking us to affirm. That's the most limited version of the rule and those were the facts that were before the Department of Commerce in this determination. But the agency should have discretion to, if a new set of facts were to come along, to also reach a determination and the Chevron deference for statutory interpretations that are enunciated in agency determinations. So if another mixed question of fact and law such as that were to come up, I certainly can't speculate on what Commerce would do, but it appears that it would be permissible for Commerce to look to the market economy affiliates and not look and discard the non-market economies. So you're saying the rule might be parsed so that if you have two non-market economies and two market economies, part of an MNC, then the result might be different. But if you're suggesting that there's an ambiguity in this language created by the difficulty in doing these calculations based on dealing with non-market economies, why would it make a difference if we're dealing with two out of four or one out of three? Because we'd have to turn back to the purpose of the statute and under the legislative history, it's discriminatory pricing is what Congress was concerned about. So if that sort of discriminatory pricing occurred with respect to a market economy affiliate, then it would be reasonable for the agency to apply the multinational corporation provision in that case, even if there were non-market economy country affiliates as well. So we're supposed to read a caveat to the statute that where we've got a question about discriminatory pricing? I mean, my problem with this is that I think the statute is relatively clear in terms of if you meet these criteria, you go. But we believe, and the Department of Commerce believes differently in that Section 1677-18 makes very clear that prices that are paid in non-market economy countries and non-market economy currencies do not reflect fair value. And that's the whole point of the dumping laws to determine whether sales are made at less than fair value. I mean, that term fair value appears both in Section 1677-18 in the negative and appears in the affirmative in Section 1673. And one other point I want to get to which Mr. Rickard made talking about whether subsection C can be brought in. Well, the first condition of subsection C is that it applies only if the subject merchandise is exported from a non-market economy country. And in this case, the subject merchandise was exported from Thailand, which is a market economy country. So even under its own terms, the non-market economy statute would not apply here because the merchandise itself was not exported from a non-market economy country. Did the CIT make a finding in that regard? Was that an argument made to the Court of International Trade? Was that something that you think has been adjudicated below? The Court of International Trade never made a finding on it. The Department of Commerce did make a finding that Section 1677, you know, subsection C does not apply in this case. But as the other side suggested, there's a difference. Was that finding based on the fact that this criteria of double I wasn't met or simply because, in your view, given the two non-market economies here, it could never apply? The Department of Commerce's view was that it could not apply because it clearly could not apply on its terms if you looked at the problem from the other direction, if the respondent were, say, a Chinese company and it had a market economy affiliate. And that was the basis for the Department of Commerce's determination. The trial court sustained that but also concluded that if you look at AC1, it also, just like the multinational provision, is permeated with reference to pricing, among other things. In fact, it's entitled third country sales. And if you go to the section... Wait a minute. You're A1C, not AC1? A1C, which is the second prong of subsection D. And which provision, which of the little I, double I, and triple I, which one are you saying is not that prong? And says, if A1C applies, that's one of the three criteria for subsection D. So that was an alternative basis. For these reasons, we have no more questions. And Mr. Rickard, you have a little more than three minutes remaining. I just want to clarify that while our position is that the Commerce's interpretation or construction ought to be evaluated under the first prong of Chevron, even if it's evaluated under the second prong of Chevron, that it's not reasonable. Neither the government nor the Commerce appear to contend that the MNC provision, by the terms of the statute, is precluded from application on non-market economies. In other words, that they could not ever apply the provision where a non-market economy is involved. But continue to go back to the point that normal value has to be determined by prices. And this is a confusing aspect of the statute because it moves throughout. There are both ways to determine normal value with reference to prices and without reference to prices. In fact, half of the four methodologies available are without reference to prices. And in the circumstance of Taimai, under subsection A1C, A1C applies, this third country sales provision applies, because there wasn't enough home market sales, there weren't sufficient home market sales to allow for comparison with export prices. But Taimai's home market value would not be, their normal value for the foreign like product would never be determined in terms of prices because they didn't have sales in third country markets that were applicable. So they would kick over to constructed value. And again, that would be normal value determined without reference to any pricing data. Thank you, your honors.